67 F.3d 308
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Borislav Vasilev SAVOV, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 94-70473.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted via Telephone Conference July 26, 1995.
Decided Sept. 28, 1995.
 
 Before: NOONAN and HAWKINS, Circuit Judges; LEW, District Judge*.
 MEMORANDUM**
 Borislav Vasilev Savov (Savov) petitions this court to review the order of the Board of Immigration Appeal (the Board) denying asylum and withholding of deportation. We reverse the Board and grant the petition.
 PROCEEDINGS
 On May 24, 1991, the Immigration and Naturalization Service (the INS) served Savov with an order to show cause why he should not be deported for entering the United States without inspection by an immigration officer. On May 13, 1993, Savov conceded deportability. The Immigration Judge found Savov deportable, and continued the hearing on the issue of eligibility for asylum. On September 17, 1993, the Immigration Judge held a hearing and denied Savov's request for asylum and withholding of deportation. The Immigration Judge found that Savov had not suffered past persecution on account of political opinion because he was not arrested for "political reasons." The Immigration Judge also found that Savov had failed to provide sufficient evidence to support either a well-founded fear of persecution or a clear probability of persecution.
 On February 22, 1994, the Immigration Judge granted Savov's motion for voluntary departure. On October 27, 1993, the Board affirmed, adopting the Immigration Judge's opinion. Savov filed a timely petition for review to this court.
 FACTS
 In September of 1990, Savov, a Bulgarian citizen, entered the United States from Mexico without inspection. At the hearing held on September 17, 1993, Savov testified that he became involved in the political reform movement in Bulgaria from the end of 1989 through the summer of 1990. In December 1989, Savov attended a political rally. While at the rally, a demonstrator standing next to Savov cheered the ouster of Todor Zhivkov, the former head of the Communist regime. The police began to beat the demonstrator. Vigorously but verbally Savov objected to the police action, asserting that the demonstrator had the right to express his political views. The police responded by arresting the demonstrator and Savov. The police told Savov that he was arrested because he was "concerned about the destiny of the person [he was] defending." The police took the two to the station and there beat them with sticks. Savov was then released. After the incident, Police Chief Angel Stoichev both telephoned and visited Savov insisting that Savov file a false statement in defense of the police. The chief threatened Savov, telling him that "the Communists are still in power, they are still powerful, and they can completely destroy you as a person." Savov refused to sign the declaration. At his hearing he testified that he believed that he would be subject to persecution on returning to his native country.
 ANALYSIS
 The Board was supported by substantial evidence in finding that various early incidents in Savov's life did not constitute persecution. However, the Board's ultimate decision was not supported by substantial evidence.
 Past Persecution. In finding that Savov had not suffered from past persecution in connection with the incident at the rally, the Board wrote as follows:
 The Respondent did not persuade the Court that he was arrested for political reasons at the rally. Anyone who interferes and argues with police who are trying to arrest someone, runs the risk of being arrested themselves. This is true in most countries, including the United States. The Respondent testified that the police were "nervous and angry." The beating which ensued was, more than likely, punishment for interfering in police matters. With regard to the subsequent visits by the police, asking him to sign a statement against the other fellow, it is clear that they were not persecuting the Respondent for his political views. They simply want to get an affidavit from him to protect themselves in the law suit which had been filed.
 The Board's reasoning is troubling. If followed, it would eviscerate the asylum rights of aliens punished for their political opinion according to the law of a totalitarian regime. Savov asserted to the police officers a belief in the right to freedom of speech for Bulgarians; it is hard to imagine a clearer expression of "political opinion." He was arrested and beaten for expressing that opinion. He was therefore persecuted on account of his political opinion.
 Fear of Persecution. If an alien is found to be eligible for asylum on the basis of past persecution, asylum will be granted if the alien's life and freedom may be threatened upon return to the country of origin. Ghebllawi v. INS, 28 F.3d 83, 85 (9th Cir.1994); Singh v. Moschorak, 53 F.3d 1031, 1034 (9th Cir.1995). There is no substantial evidence to support the Board's finding that Savov could live safely in Bulgaria. Savov fears that Chief Stoichev, the officer who threatened him, will persecute him in the future if he is returned to Bulgaria. Stoichev is now the head of a commission charged with investigating the crimes of former Communists. The Board did not make any findings as to Stoichev or police brutality in Bulgaria. The latest Country Report for Bulgaria states that "Human rights groups ... complained of police brutality directed at ... citizens. To date, the Government has failed to convict and punish any police personnel for brutality against citizens." In discussing killings at the hands of the police, the Country Report states: "The climate of impunity that the Government allows to prevail is the single largest obstacle to ending such abuses." Given this climate and that Savov's persecutor remains in a law enforcement capacity, there is at least a one in ten chance that Savov will face persecution if returned to Bulgaria. Accordingly, Savov provided sufficient evidence to demonstrate a well-founded fear of persecution, and the Board should have found him eligible for asylum.
 Withholding of Deportation. For the reasons already given, the Board was not supported by substantial evidence in finding that Savov had not suffered past persecution. Consequently its decision on the withholding of deportation was skewed and should be reconsidered, viewing Savov as the victim of persecution for his political opinion.
 The petition is GRANTED. The case is REMANDED.
 
 
 
 *
 The Honorable Ronald S.W. Lew, United States District Judge, Central District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3